SARAH B. CHIPMAN, A MINOR, BY HARRIS NEWTON, HER NEXT FRIEND, *v.* THADDEUS THOMPSON, SAMUEL F. CHIPMAN *et al.*

A court of equity may relieve against the breach of a condition precedent in the nature of a penalty; and there is no good reason why it should not relieve against the breach of a condition precedent, when it would against a condition subsequent.

The substantial difference which governs courts of equity, in cases of conditions, is not whether the condition be precedent or subsequent, but whether a compensation can, or cannot be made.

The Court is not bound, in all cases where a compensation can be made, to give relief; for the party seeking relief may have so conducted himself as to have lost all claim to its interposition; but when this is not the case, and it is equitable under the circumstances that relief should be given, it is competent for the Court to give it.

A bill, filed and sworn to by a person who is deceased, is evidence against his heirs to prove what might be proved by his declarations.

In a suit respecting lands, where defendants were described in the bill as heirs of the father, when in fact they claimed as heirs of their mother, *it was held*, that they were properly made parties, as claiming an interest in the property in controversy; and that, if they wished to take the objection that their interest was not properly made to appear in the bill, they should have demurred; and that it was too late to raise it on the hearing, after proofs had been taken, and it appeared to the Court that the proper parties were before it.

CYRUS CHIPMAN, in his lifetime, being the owner of some personal property, and seized in right of his wife, Anna Chipman, of a farm of ninety acres in Avon, Oakland county, and being desirous of providing for the support of himself and wife during their lives, and for the education and support of Anna F. Chipman, a minor daughter, during her minority, on the 12th day of February, 1834, entered into the following agreement with his son, George A. Chipman:

" This agreement made and entered into this 12th day of February, A. D. one thousand eight hundred and thir-

ty-four, by and between Cyrus Chipman, of Oakland, in the county of Oakland, and the territory of Michigan, of the one part, and George A. Chipman, of the same place, of the other part, witnesseth: That the said Cyrus Chipman, in consideration of the agreements on the part of the said George A. Chipman, hereinafter mentioned, doth by these presents lease and to farm let unto the said George A. Chipman, and to his heirs, the farm on which the said Cyrus Chipman now lives, in the township of Oakland aforesaid, for and during the natural lives of the said Cyrus Chipman and Anna Chipman, wife of the said Cyrus; and the said Cyrus Chipman doth hereby convey to the said George A. Chipman and his heirs, all the personal property now owned by him, excepting the household furniture, which is to be equally divided between the said George A. Chipman and Anna F. Chipman, or their heirs. In consideration of which, the said George A. Chipman agrees, for himself, his heirs, executors and administrators, to support, clothe, victual and lodge the said Cyrus Chipman and Anna Chipman during their natural lives, and furnish them with all necessary medicines and medical attendance in sickness, and all other attendance necessary in their old age, and in all respects conduct himself towards the said Cyrus Chipman and Anna Chipman as a son ought to conduct himself towards his parents; and in case the said Cyrus and Anna, or either of them, shall at any time desire to reside at any other place than with the said George A. Chipman, they are to have that privilege, and the said George A. Chipman's liability to support them is to continue the same.

"And, whereas, a deed of the aforesaid farm has this day been made out and executed, and placed in the hands of Thaddeus Thompson, of the township of Troy, in the county of Oakland aforesaid; now, if the said George A.

Chipman shall well and truly perform on his part all the conditions of this agreement, the said deed, on the death of the said Cyrus Chipman and Anna Chipman, is to be delivered to the said George A. Chipman, his heirs, executors or administrators; but in case the said George A. shall fail to perform the said conditions, the said deed is not to be delivered to him, but the land therein specified to be and remain in the said Anna Chipman, the same as though the said deed had not been executed. And the said George A. Chipman further agrees to support Anna F. Chipman, during any sickness with which she may be visited, until she *is of the age of one and twenty, provided she does not sooner get married,* and also give the said Anna F. Chipman a good common education, and clothe her during her minority."

A deed of the farm was made out, executed and acknowledged in due form of law by Cyrus and Anna, and delivered to Thompson to be delivered by him in pursuance of the agreement. Cyrus and Anna afterwards resided on the farm with George, who, it is admitted, during his lifetime, in all respects fulfilled the agreement. Anna died in January, 1837, and George in September of the same year, leaving Eliza Ann Chipman, his widow, and the complainant, Sarah B. Chipman, his only child and heir at law. Cyrus, after the death of George, continued to reside on the farm, with George's widow and child, as he had done in George's lifetime. On the 9th day of June, 1839, the widow intermarried with Harris Newton, who went to reside on the farm with her, and, soon after, was appointed guardian to complainant. Cyrus, becoming dissatisfied with Newton's conduct, on the 26th day of July following went to reside with Samuel F. Chipman, another son of his, with whom he continued until his death in October, 1840. Newton, during this time, paid but fifteen

dollars towards supporting him. Bills for board and the like were presented for payment, which he neglected or refused to pay, on the ground they were extravagant, but alleged a willingness to pay what was right. After the death of Cyrus, in consequence of the unwillingness of the heirs, Thompson refused to deliver up the deed, and Samuel F. Chipman commenced an action of ejectment against Newton, to recover possession of the farm. Thereupon complainant filed her bill against Thompson and the heirs, praying a delivery of the deed to her, on her paying what was justly due for the support and maintenance of Cyrus Chipman, after he left the residence of her guardian, and for an injunction against the proceedings at law to recover possession of the farm.

*O. D. Richardson* and *W. Draper*, for complainant.

*H. Chipman*, for defendants.

THE CHANCELLOR. The relief asked is opposed principally on three grounds: *First.* That the agreement between the father and son, was to be executed by the latter in person, and, on his death, became inoperative and void. *Second.* That it is not binding on the heirs of Anna Chipman, and should not be enforced against them. *Third.* That it has not been performed, and a court of equity will not relieve against a condition precedent.

*First.* I see nothing in the agreement to warrant a conclusion that George was to have an estate of inheritance only in case he survived his parents. No such condition is annexed to the delivery of the deed by Thompson, who, after the death of the parents, in case George performed on his part, was to deliver it to him, "his heirs, executors, or administrators." Why were George's representatives mentioned, if he only was to receive the deed, and perform

the conditions on which it was to be delivered.   They were bound, as well as George, for the support of the old people.   But why were they so bound, if the agreement was to be at an end in the case George did not survive his parents?   The language of the agreement is, "now, if the said George A. Chipman shall well and truly perform on his part all the conditions of this agreement, the said deed, on the death of the said Cyrus Chipman and Anna Chipman, is to be delivered to the said George A. Chipman, his heirs, executors, or administrators."   Although a performance by George, and not by his representatives, is here mentioned, yet a performance by them is not excluded.   On the contrary, it is clearly to be implied, from the fact that George had before bound them in express terms; and the agreement provides for the delivery of the deed to "his heirs, executors, or administrators," as well as himself.   If they had been left out by design, where George's name first occurs in this part of the agreement, they would, undoubtedly, have been omitted two or three lines lower down, where both he and they are mentioned in connection with the delivery of the deed.

It is said that part of the agreement which required George to conduct himself towards his father and mother as a son ought to conduct himself towards his parents, is an essential part of the agreement, and of the condition on which the deed was to be delivered to Thompson. This is true.   The father not only had a right to expect from his son kinder treatment in his old age than from a stranger, but actually made it a part of the condition on which the deed vesting in him an estate of inheritance in the farm, was to be delivered.   But no sufficient argument can be drawn from this circumstance, to warrant a different construction of the agreement from the one already given.   It is conceded that George in his lifetime lived up

to the agreement in every particular. His death before his parents was probably looked upon, when the agreement was entered into, as an event by no means likely to occur; yet it was foreseen the old people might, from some cause or other, wish to change their residence and live with some one else; and George's liability for their support was expressly provided for in that event. Nothing could show more clearly than this, that the personal care and attention of George, though one of the inducements that led to the agreement, was by no means the only or principal inducement.

*Second.* That the agreement is not binding on the heirs of Anna Chipman, and should not be enforced against them. Complainant does not seek the specific performance of a contract, made with Anna and her husband, for the purchase of the farm. If she did, it might well be asked whether such contract, as to Anna, was not void or voidable, and whether this Court would decree a specific performance of it against her heirs. The bill asks nothing of the kind; but, on the contrary, that the deed executed and acknowledged by Anna as well as her husband, so as to pass her estate, may be delivered to complainant as the heir at law of the grantee. The deed was delivered to Thompson as an escrow, to be delivered by him to George, on his performing his agreement with his father. Now, can there be any doubt it was competent for the father, in his lifetime, to have released George from the performance of the agreement, or to have consented to an absolute delivery of the deed? I think not. The performance of the agreement on the part of George was a condition precedent, and, like any other condition precedent, might have been released. Neither Anna in her lifetime, nor her heirs after her death, could have objected, for she was not a party to the agreement. The

only interest her heirs had after her death, in the agreement, was a contingent right to the estate of their mother in the farm, if the deed was not absolutely delivered with the consent of the father in his lifetime, or the agreement performed on which it was to be delivered after his death, or so far performed that a court of equity would compel a delivery of it against his personal representatives. This brings us to the next and last objection.

*Third.* That the agreement has not been performed, and a court of equity will not relieve against a condition precedent. The agreement does not appear to have been strictly kept by Newton, the guardian, after Cyrus went to live with his son Samuel. Up to this time there is no complaint. After George's death, Cyrus continued to live on the farm with his daughter-in-law, until she married Newton, as he had done before, but, soon after the marriage, he became dissatisfied, and went to live with Samuel.

A court of equity may relieve against the breach of a condition precedent, in the nature of a penalty. *Wallis* v. *Crimes,* 1 *Ch. Ca.* 89. Mr. Cruise says: "The substantial difference which governs courts of equity in cases of conditions, is not whether the condition be precedent or subsequent, but whether a compensation can, or cannot be made." 2 *Cruise Dig.* 40. The Court is not bound in all cases, where a compensation can be made, to give relief. The party asking relief may have so conducted himself as to have lost all claim to its interposition. He may have absolutely refused to perform the contract, or he may have renounced all rights under it. But, when this is not the case, and it is equitable under the circumstances that relief should be given, it is competent for the Court to give it. A circumstance that will always have great weight with the Court is, that the condition has been

in part performed; that the party has done in part what he was bound to do, to entitle him to what he asks, and stands ready to make good the deficiency. In *Radcliff* v. *Warrington*, 12 *Ves. R.* 326, a specific performance of a contract for the sale of an annuity was decreed in favor of a vendor, who had lost his remedy at law on the contract by his own default, and who would have lost nothing, had relief been refused, except the money deposited on the sale by the vendee. There is no good reason why the Court should not relieve against the breach of a condition precedent, where it would against a condition subsequent.

George was to have, for supporting his parents, the personal property and a lease of the farm for three lives, and after their deaths an estate of inheritance in the farm, if he lived up to the agreement. The inheritance was as much a part of the consideration he was to receive, as the personal property or lease; only, instead of being given absolutely, it was made to depend on the performance of the agreement on his part. The condition is in the nature of a penalty, inserted in the agreement to secure a more faithful execution of it.

Anna Chipman received her support for her lifetime, and Cyrus Chipman his for nearly five years and a half; when he went to live with his son Samuel. After Newton's marriage with the widow, he took charge of the property, and went on to manage it as his own; which appears to have given dissatisfaction to the old gentleman, and was his reason for going to live with Samuel. It was not on account of any harsh or improper treatment; for, after he had left, he admitted he had been well treated, and that he could not have been better treated by his own children. Newton did not refuse to provide for him. We find him at one time paying fifteen dollars,—at another

offering to pay Samuel thirty dollars, to apply on his board,—at another making arrangements with a merchant to let him have cloth for a coat and overcoat,—and then paying some thirty dollars towards his doctor's bill.

I am satisfied from the testimony there was a strong desire, if not a determination, on the part of the old gentleman and Samuel, soon after the former went to live with the latter, to put Newton in fault if possible, and an end to that part of the agreement relating to the deed. The bill of August 21st, 1839, for four weeks' board &c. presented to Newton for payment, shows pretty clearly to my mind a determination to make him either pay unreasonable charges, or refuse payment altogether. The latter was probably the object, and, to obtain evidence of the fact, the reason why the bill was presented by the witness Luce, and not by Samuel himself. The one hundred dollars demanded by Samuel for his father to go to the state of New York, where he had spent the preceding winter, and the old gentleman's objections to the cloth, that it was not fine enough, when he called at the store to see it, are additional circumstances from which the intention of the parties may fairly be inferred. But we need not rely on these, for we have the positive testimony of Cyrus A. Chipman, one of the sons, on this point. He says Newton offered to furnish articles that his father wanted; but his father said he would not receive any thing from him, for he could not fulfil the contract;—that he, Newton, had no business there;—referring to the possession of the farm.

Complainant is entitled to the deed, on paying what is due for the maintenance of her grandfather, after he went to reside with Samuel.

A question of evidence, and a preliminary objection made on the part of defendants, must not be passed over unnoticed.

The bill filed by Cyrus in his lifetime against Newton, and subscribed and sworn to by him, to obtain an injunction, is admissible as evidence for complainant, to prove what may be proved by the declarations of Cyrus; but for no other purpose. There can be no doubt on this point, when the bill is verified by the oath of the party, whatever may be the rule of law when it is not so verified.

It was insisted on the argument that no relief could be given in the present suit against defendants as the heirs of Anna Chipman, because they are not named as her heirs in the bill, but as heirs of Cyrus Chipman. The case made by the bill is against the heirs of Anna Chipman. The fee was in her, and not in her husband, who never had any thing more than a life estate. Defendants do not deny they are her heirs, nor that whatever interest they have they derive through her. On the contrary, they insist, as her heirs, no relief can be had against them, not only in the present suit, but in any suit; and, failing in this, they turn round and say it cannot be had in the present suit, because they are not named in the bill as her heirs. It must be recollected complainant's bill is filed to obtain a title to the farm, and not to charge defendants with a debt of the father; for, in that case, it would be necessary to show they had inherited property from the father to pay the debt, and property inherited of the mother would not make them liable to the creditor of the father. There is a great difference between such a case and the one before the Court. They were made parties because they claimed an interest in the farm. If they claimed no interest in the farm, there was no necessity for making them parties, and the bill for that reason should be dismissed against them; but, claiming an interest, they were properly made parties, although they are described in the bill as the heirs of the father instead of the mother.

Chipman *v.* Thompson.

It is immaterial through which of their ancestors they derived title, so far as the necessity existed for making them parties. If defendants wished to avail themselves of the objection, that it did not appear on the face of the bill they had any interest in the suit, they should have demurred. It is too late to raise it on the hearing, after proofs have been taken and it appears to the Court the proper parties are before it.

The personal representative of Cyrus Chipman, if there be one, should have been made a party, as he would be entitled to the compensation to be made for the support of his testator, or intestate, after he left Newton's. It is probable there is none, as Cyrus does not appear to have left any property at his death. I shall therefore direct a reference to a Master to inquire whether there is any personal representative, and if there be, complainant is to have leave to make such personal representative a party by supplemental bill. If there be none, then the Master is to inquire and report what sum is due to Samuel F. Chipman for supporting his father, (it appearing he resided with Samuel,) subsequent to July 26th, 1839, or to any other person, or for necessary medicines, or medical attendance. The testimony already taken is to be used by any of the parties on the hearing before the Master, who is to be at liberty to summon such witnesses before him, and take such further testimony on the subject as he may think proper, and to make his report with all convenient speed.